UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re: | )<br>) |
| William L. Hasty | ) Case No. 04-06297-jw<br>) Chapter 7 |
| Debtor. | )<br>) |
| W. Clarkson McDow, Jr., United States Trustee | )<br>) |
| Plaintiff, | )<br>)<br>) Adversary No. 04-80274-jw |
| vs | )<br>) |
| William L. Hasty | )<br>) |
| Defendant. | )<br>)<br>)<br>) |

## ORDER DENYING DISCHARGE

THIS MATTER is before the Court for trial upon the United States Trustee's ("UST" or "Plaintiff") complaint objecting to the discharge of William L. Hasty ("defendant" or "debtor"). The UST's complaint seeks denial of discharge pursuant to 11 U.S.C. § 727(a)(3,5). The defendant filed an answer, containing a general denial of the UST's allegations. The Court conducted a pre-trial conference and the parties participated in and concluded discovery. The Court provided notice of the date, time and place of trial to the defendant at the address contained in the petition and confirmed by defendant at the pre-trial conference as the proper address for notices. The defendant did not appear for trial. Following the trial the defendant contacted the

Court in connection with another matter[1] and specifically noted that his correct mailing address is the one used by the Court in providing notice of the trial. After considering the pleadings in this matter, the proffered testimony[2] and the exhibits admitted at trial, the Court makes the following findings of fact and conclusions of law.[3]

## FINDINGS OF FACT

William L. Hasty filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 28, 2004. He filed his bankruptcy case without counsel. Robert F. Anderson was appointed interim chapter 7 trustee and a meeting of creditors was scheduled for June 25, 2004. The defendant is a former State Farm Insurance agent who closed his agency at the end of 1999. He earned an income, after business expenses, of approximately $200,000 per year in the late 1990's. Mr. Hasty has filed previous bankruptcy cases, a chapter 7 and chapter 13 in the 1980's and, more recently, a chapter 11 in 1993 and a chapter 13 in 1996. The two 1990's cases were filed *pro se*. Mr. Anderson, the trustee in this case, represented Mr Hasty in two bankruptcy cases in the 1980's. The trustee disclosed this connection with the debtor at the meeting of creditors and there was no objection to his continued service nor was there any indication of a

---

[1] The Court entered an order overruling Mr. Hasty's objection to a claim for failure to respond to a notice of deficiency from the Court that the debtor had failed to comply with the Court's Local Rules and procedures for providing notice to the claimant of the objection. Mr. Hasty filed a motion to reconsider the order based on the fact that the notice of deficiency was provided to an incorrect address. Mr. Hasty noted his proper mailing address in the motion to reconsider. It is the address the Court used in providing notice of this trial.

[2] Counsel for the United States Trustee proffered the testimony of Robert F. Anderson, Esquire, the chapter 7 trustee in this case. The trustee was present in the courtroom, heard the proffer, and confirmed that the statements accurately reflected the facts to which he would have testified.

[3] To the extent any of the following findings of fact constitute conclusions of law, these are adopted as such, and to the extent that any of the following conclusions of law constitute findings of fact, they are so adopted.

conflict of interest.

The schedules and statements filed in this bankruptcy case indicate that Mr. Hasty has a substantial debt, in excess of $450,000, to the state and federal tax authorities. He discloses only one other debt, a small credit card account. Mr. Hasty reports current income of $ 6,408 and expenses of $ 4,243. The only significant asset reported by the defendant is a deferred compensation account with State Farm and a "contract buy out." Mr. Hasty lists net gambling losses of $18,000 in the year prior to bankruptcy.

The chapter 7 trustee wrote the debtor, prior to the meeting of creditors, two letters requesting information and documents. The trustee, representatives of the Internal Revenue Service and counsel for the UST examined the debtor at the meeting of creditors and at a continued meeting of creditors. In response to the trustee's letters Mr. Hasty responded with ten separate letters, three of which relate to the defendants marital status or to his many temporary residence addresses in the preceding years. Mr. Hasty did provide copies of tax returns for tax years 2001, 2002 and 2003, all of which were dated May 18, 2004. There was no supporting documentation for the tax returns. A second letter concerning the tax debt recites that Mr. Hasty has "no available records of my other federal and state tax debt assessments." A final letter from Mr. Hasty reports that for ten separate periods of time in various locations he has no records of his gambling activities and that all gambling was on a "cash basis", save four or five checks and four or so bank statement entries.

Mr. Hasty repeatedly responded to examination at the two meetings of creditors that he had no records of expenditures or of major financial transactions such as the purchase and sale of real estate. Mr. Hasty testified that he had no documents concerning transactions that affected his tax liability, such as documentation of a purported trust. Mr. Hasty's financial account

statements, provided to the trustee, do not support Mr. Hasty's testimony at the meeting of creditors and contradict some of his representations in the correspondence with the trustee. The proceeds of Mr. Hasty's deferred compensation and "buy-out" agreements, after deductions for living expenses and the claimed gambling losses, are not fully accounted for in either the schedules nor in the testimony at the meeting of creditors.

The debtor testified at the second meeting of creditors that he had at least one other credit card account and three cellular phone accounts for which he had no records. He testified that he had recently received information concerning one of these accounts from a collection agency and had thrown it away. These debts were not scheduled by Mr. Hasty and the creditors have thus receive no notice of the bankruptcy case.

The record is devoid of any evidence that the failure to keep and preserve records is justified under the circumstances of this case. The debtor has not offered any explanation for the deficiency of assets to meet his liabilities.

## CONCLUSIONS OF LAW

The plaintiff has the burden of proving an objection to discharge under 11 U.S.C. § 727 by a preponderance of the evidence. See e.g. *Grogan v. Garner*, 498 U.S. 279 (1991); *Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994). Once the plaintiff has made a *prima facie* case the burden of persuasion shifts to the debtor. *Farouki*. A bankruptcy discharge is not a matter of right but is a statutory privilege afforded an honest debtor who meets certain requirements. *In re Weldon*, 184 B.R.710, 712 (Bankr. D.S.C. 1995).

A.    Failure to keep records.

The UST has requested that the defendant's discharge be denied pursuant to 11 U.S.C. § 727(a)(3) for the failure to keep and preserve information from which the debtor's financial

condition or business transactions may be ascertained. Section 727(a)(3) provides:

>   (a)   The court shall grant the debtor a discharge, unless -
>
>   (3)   the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all the circumstances of the case.

"The purpose of section 727(a)(3) is to insure that the trustee and creditors are supplied with dependable information on which they can rely in tracing a debtor's financial history. The trustee and creditors are entitled to complete and accurate information showing what property has passed through the debtor's hands prior to his bankruptcy." *Siegel v. Weldon (In re Weldon)*, 184 B.R. 710, 714 (Bankr. D.S.C. 1995) (citing *In re Esposito*, 44 B.R. 817, 826 (Bankr. S.D.N.Y. 1984)). In order to obtain a discharge, a debtor must keep and preserve records. Keep and preserve are not synonyms. "'Keep' has the same meaning it would have in phrases such as 'to keep a diary' or to 'keep a record', that is, to maintain a record by entering it in a book. Written information is required such that there are 'accurate signposts on the trail showing what property passed through the debtor's hands during the period prior to his bankruptcy.'" *Weldon*, 184 B.R. at 714 (quoting *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 594 (Bankr. N.D.Tx. 1991)). See generally *In re Volpe (Transworld, Inc. v. Volpe)* Adv. No. 02-80372-w, (Bankr. D.S.C. September 5, 2003).

Neither the objecting party nor the Court is required to reconstruct the debtor's financial trail. The debtor must account for his financial condition and business transactions. "The Code . . . in no way imposes burdensome demands on the debtor; the only requirement is that the trail of the debtor's assets must be discernable." *Weldon*, 184 B.R. at 714. The debtor admits to heavy gambling. "Gamblers have long been denied discharge because their records were insufficient to

explain the loss of their property." 7 J. Bank. L. & Prac. 307, 311-12 (1998). *(See the cases cited in fn 12)*. This has long been the construction of a requirement for discharge in this Circuit. See *Crider v. Jordan*, 255 F.2d 378 (4th Cir. 1958).

The crux of the UST's argument is that the debtor has failed to retain the records that came into his possession, both as to defendant's gambling and his other financial transactions. There is no underlying support for the financial documents that the debtor did provide. The debtor has exhibited a careless disregard for the necessity of maintaining even a minimal record of his financial transactions and interests. The Court is persuaded by the UST's evidence and the absence of an explanation from the debtor that the defendant's discharge should be denied pursuant to 11 U.S.C. § 727(a)(3).

B.    Failure to account for the deficiency of assets to meet liabilities.

The UST also seeks denial of the defendant's discharge pursuant to 11 U.S.C. § 727(a)(5), which provides:

(a)    The Court shall grant the debtor a discharge, unless -

(5)    the debtor has failed to explain satisfactorily, before determination of denial of discharge, under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities.

The debtor's primary asset is a contract with State Farm which pays deferred compensation and provides income following the closing of the debtor's agency. The nature of the second part of the contractual relationship with State Farm is unclear from the exhibits and the debtor's testimony at the two meetings of creditors. The debtor did not appear at trial.

The debtor testified and verified in his petition that he had disposable income after paying monthly living expenses. Some part of that income was spent on gambling in past years. As to the balance, the debtor made no accounting. It is clear from the record that the debtor has

enjoyed an above average economic situation but has accumulated or admits to no accumulation of assets. In his wake the defendant leaves significant unpaid tax debt, some of which would otherwise apparently be dischargeable in this chapter 7 case.

The Bankruptcy Code provides for denial of discharge where a debtor cannot or does not explain the deficiency of assets to meet liabilities. "The debtor's explanation must be 'reasonable and credible so as to satisfy the court that the creditors have no cause to wonder where the assets went.'" *In re Ottoson-King (Powers v. Ottoson-King)*, No. 00-1706 (4th Cir. February 20, 2001) citing *In re Farouki*, 133 B.R. 769, 777 (Bankr. E.D.Va. 1991) aff'd 14 F.3d 244 (4th Cir. 1994). Here the debtor has a contract right and the proceeds of that right are missing, other than as accounted for in connection with the monthly living expenses. As to the balance, the Court is left with the claim that a portion was gambled away and there is no explanation as to the rest. The Court has no evidence whether the debtor engaged in legal or illegal gambling, or both. While it would not be surprising that a defendant kept no record of illegal gambling, "[t]he mere fact that a debtor has spent money illegally does not satisfactorily explain the debtor's deficiency of assets." *In re Dolin*, 799 F.2d 251, 253 (6th Cir. 1986)(denying the discharge of a debtor because claimed illegal drug use and gambling do not satisfactorily explain the debtor's deficiency of assets, even acknowledging that people generally do not wish to keep records of illegal activity).

The Court is satisfied that the debtor has not satisfactorily explained the deficiency of assets to meet his liabilities.

## Conclusion

Based on the proffered testimony and the exhibits at trial, the Court finds that the UST has proven his case to deny the discharge of the debtor by a preponderance of the evidence. The

defendant has not come forward to rebut the plaintiff's case in any fashion. The discharge of William L. Hasty is denied pursuant to 11 U.S.C. § 727(a)(3,5).

AND IT IS SO ORDERED.

_/s/ John E. Waites_
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
November 15, 2004